UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------- X
HECTOR CHOCOLATL,                          :
                                           :
                    Plaintiff,             :
                                           :        **REPORT AND RECOMMENDATION**
         -against-                         :
                                           :            18 Civ. 3372 (CBA) (VMS)
RENDEZVOUS CAFE, INC., doing               :
business as SAVOR CAFE, and IGOR           :
SAIAG,                                     :
                                           :
                    Defendants.            :
-------------------------------------------------- X

**Vera M. Scanlon, United States Magistrate Judge:**

      Plaintiff Hector Chocolatl ("Plaintiff") brings this action against Defendants Rendezvous

Cafe, Inc., doing business as Savor Cafe ("Rendezvous") and Igor Saiag ("Mr. Saiag," together

with Rendezvous, "Defendants") pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

§§ 201 et seq., and the New York Labor Law ("NYLL").  See generally Compl., ECF No. 1.[1]

Plaintiff seeks to recover unpaid overtime compensation, "spread of hours" premiums, liquidated

damages, pre-judgment interest, post-judgment interest, statutory damages for Defendants'

failure to furnish Plaintiff with accurate wage statements, and attorney's fees and costs.  Id.

      Despite proper service of the summons and complaint on Defendants, see Cooper Decl.,

Exs. B-D, ECF Nos. 14-2 to 14-4, Defendants have failed to appear or otherwise defend against

this action.  Plaintiff now moves for a default judgment against Defendants pursuant to Federal

---

[1] Plaintiff originally brought this action individually and on behalf of others similarly situated but
does not pursue collective action claims in his motion for default judgment.  See generally
Memorandum of Law in Support of Plaintiff's Proposed Damages ("Pl.'s Mem."), ECF No. 17.
The Court deems the putative collective action claims waived.

Rule of Civil Procedure ("Rule") 55(b)(2).  See ECF No. 14.  The Honorable Carol B. Amon referred the motion for a report and recommendation.

For the following reasons, the Court respectfully recommends that the District Judge deny Plaintiff's motion for default judgment against Mr. Saiag, and enter a default judgment in Plaintiff's favor against Rendezvous and award damages against Rendezvous as set forth below.

## I.    BACKGROUND

### A.    Factual Background

The following facts are taken from the Complaint unless otherwise noted, and are accepted as true for purposes of this report and recommendation insofar as they are related to questions of liability in this case.

Rendezvous is a domestic business corporation organized and existing under New York law.  Compl. ¶ 6.  It is a "kosher / dairy restaurant."  Id. ¶ 9.  Rendezvous engages in interstate commerce or the production of goods for commerce and had, at all relevant times, gross revenues in excess of $500,000.00.  Id. ¶¶ 41, 43.

Defendant Mr. Saiag is the owner, officer, director and/or managing agent of Rendezvous, and he participated in the day-to-day operations of Rendezvous.  Id. ¶ 7.  At all relevant times, Mr. Saiag had the power to hire and fire employees, determine rates and methods of pay, determine work schedules, supervise and control the work of employees, and create and maintain employment records.  Id. ¶¶ 27-28.

On or about February 17, 2014, Plaintiff was hired to work as a cook at Rendezvous, located at 2925 Avenue P, Brooklyn, New York 11229.  Id. ¶ 16.  Plaintiff was employed by Defendants until May 10, 2018.  Id. ¶ 17.  With Plaintiff's hiring in 2014, Plaintiff was paid a fixed salary of $450.00 per week.  Id. ¶ 19.  Plaintiff's salary increased over time to $520.00 per week in 2015, $650.00 per week in 2016, and $800.00 per week in late 2016 through the end of

his employment at May 10, 2018.  Id. ¶ 19.  Plaintiff generally worked more than forty hours per week, working five days per week (Sunday through Thursday) for twelve hours per day.  Id. ¶¶ 18, 30.  During the "winter," Plaintiff also worked approximately six hours on Saturdays.[2]  Id. During a typical workweek, Plaintiff worked between sixty and sixty-six hours per week, depending on the season, id., but he was not compensated for the excess twenty to twenty-six hours at the overtime pay rate (time and one-half) to which he was entitled under New York's Hospitality Industry Wage Order, N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 12, § 146 et seq., or with a "spread of hours" premium, to which he was entitled under the NYLL.[3]  Compl. ¶ 20.  Plaintiff alleges that Defendants' failure to pay earned overtime compensation and a "spread of hours" premium was willful and intentional.  Id. ¶¶ 23-25.

Plaintiff was paid partially by check and partially by cash, and he did not receive wage statements indicating his hours, hourly rate or pay from Defendants as required by New York's Wage Theft Prevention Act ("WTPA").  Id. ¶¶ 21, 26, 31.  Defendants failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment.  Id. ¶ 48.

B.    **Procedural History**

Plaintiff filed this action against Defendants, see Compl., and he returned an executed summons for each Defendant, Cooper Decl., Exs. B-D.  Defendants did not answer or otherwise respond to the Complaint.  Plaintiff requested, and the Clerk of Court entered, certificates of default against both Defendants.  See ECF Nos. 8, 12.

---

[2] In his declaration, Plaintiff notes that he was paid an additional $50.00 for these extra six hours of work.  Pl.'s Decl., ECF No. 16 ¶ 5.

[3] The Court understands Plaintiff's unpaid wage claim to be the same as these two claims – that he was not paid for these hours above forty hours and the spread of hours.

Plaintiff filed the instant motion for default judgment, ECF No. 14, together with a memorandum of law, ECF No. 17; Declaration of Plaintiff, ECF No. 16; Declaration of Plaintiff's Counsel ("Cooper Decl."), ECF No. 15, with, <u>inter alia</u>, an attorney billing statement attached thereto, Cooper Decl., Ex. G; and proof of service of motion papers on Defendants, ECF No. 18.  As of the date of this report and recommendation, Defendants have not responded.

### C.    Plaintiff's Claims

Pursuant to the FLSA and the NYLL, Plaintiff seeks from Defendants unpaid wage and overtime compensation, "spread of hours" premiums, liquidated damages, pre-judgment interest, post-judgment interest, statutory damages for Defendants' failure to furnish Plaintiff with accurate wage statements, and attorney's fees and costs.  Compl. at 13.

## II.    ANALYSIS

### A.    Default Judgment Liability

#### 1.    Legal Standard

Rule 55 establishes a two-step procedure by which a party may obtain a default judgment.  <u>See</u> <u>Bricklayers & Allied Craftworkers Local 2, Albany, NY Pension Fund v. Moulton Masonry & Const., LLC</u>, 779 F.3d 182, 186 (2d Cir. 2015) (citing Fed. R. Civ. P. 55); <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, if a party has failed to plead or otherwise defend against an action, the Clerk of Court must enter a certificate of default by making a notation on the record.  <u>See</u> Fed. R. Civ. P. 55(a).  Second, after this entry of default, if the defaulting party still fails to appear or move to set aside the default, the court may enter a default judgment if the complaint is well-pleaded.  <u>See</u> Fed. R. Civ. P. 55(b).  The trial court has "sound discretion" to grant or deny a motion for default judgment.  <u>See</u> <u>Enron Oil</u>, 10 F.3d at 95.  In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of

4

the defaulting party.  Id. at 95-96 (recognizing "the responsibility of the trial court to maintain a balance between clearing its calendar and affording litigants a reasonable chance to be heard").

A party's default constitutes a concession of all well-pleaded allegations, except for those relating to damages.  See Cement & Concrete Workers Dist. Council Welfare Fund v. Metrofoundation Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  The court must conduct an inquiry sufficient to determine the amount of damages to a "reasonable certainty."  Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); see Cement & Concrete Workers, 699 F.3d at 232.  Once a defendant is found to be in default, a plaintiff must prove that the compensation he or she seeks relates "to the damages that naturally flow from the injuries pleaded."  Greyhound, 973 F.2d at 159.  This inquiry may be accomplished by evaluating the detailed affidavits and documentary evidence submitted by the plaintiff or conducting an evidentiary hearing to evaluate the amount of damages to be awarded against a defaulting defendant.  See Fed. R. Civ. P. 55(b)(2); see also Cement & Concrete Workers, 699 F.3d at 234 ("[A] district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence."); Finkel v. Romanowicz, 577 F.3d 79, 87 (2d Cir. 2009) ("Rule 55(b) commits this decision to the sound discretion of the district court.").

### 2.    Service Of The Summons And Complaint Was Proper

A court may not properly enter a default judgment unless it has jurisdiction over the parties against whom or which the judgment is sought.  See City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 133 (2d Cir. 2011); Sajimi v. City of New York, No. 07 Civ. 3252 (ENV) (MDG), 2011 WL 135004, at *3 (E.D.N.Y. Jan. 13, 2011).  A party against whom or which a default judgment is sought must have been served with process.  See Sajimi, 2011 WL

135004, at *3 ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." (quoting <u>Dynegy Midstream Servs. v. Trammochem</u>, 451 F.3d 89, 94 (2d Cir. 2006)). Pursuant to Rule 4(e)(1), service may be effected in accordance with the service rules of the state where the district is located or service is made.

As to corporate Defendant Rendezvous, the New York Business Corporation Law permits service based on delivery of the summons and complaint to the New York Secretary of State ("Secretary of State") as an agent of the corporation. N.Y. Bus. Corp. Law § 306(b)(1). Service on a corporation may also completed by delivery of the summons and complaint to an "officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." N.Y.C.P.L.R. § 311(a). Here, Plaintiff first served Rendezvous with notice of this action by delivering the summons and complaint to an unnamed alleged "general agent" of Rendezvous at the business premises. Cooper Decl., Ex. C. After entry of default was denied with respect to Rendezvous for inadequate information regarding proper service, 11/20/2018 Dkt. Entry, Plaintiff served a copy of the summons and complaint for the corporate defendant on the Office of the Secretary of State. <u>See</u> Cooper Decl., Ex. D. Based on this later service, Plaintiff properly served Rendezvous pursuant to New York Business Corporation Law § 306(b)(1).

As to individual Defendant Mr. Saiag, New York Civil Practice Law and Rules allow for service of process:

> by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business . . . such delivery and mailing to be effected within twenty days of each other . . . .

N.Y.C.P.L.R. § 308(2).  Here, Plaintiff served Mr. Saiag with notice of this action by delivering

the summons and complaint to an individual at Mr. Saiag's place of business identified as Mr.

Saiag's co-worker, who was determined by the process server to be a person of suitable age and

discretion, and by mailing a copy that same day to Mr. Saiag at his place of business.  See

Cooper Decl., Ex. B.  Plaintiff properly served Mr. Saiag pursuant to N.Y.C.P.L.R. § 308(2).

Service of the summons and complaint was proper as to both Defendants.

### 3.   Defects In Service of Motion for Default Judgment

The motion for default judgment was not served properly on Mr. Saiag.[4]  As a result, this

Court respectfully recommends that the motion be denied with respect to Mr. Saiag.

A motion for default judgment will not be granted unless the party making that motion

adheres to certain local and individual rules.  See Bhagwat v. Queens Carpet Mail, Inc., No. 14

Civ. 5474 (ENV) (PK), 2015 WL 13738456, at *1 (E.D.N.Y. Nov. 24, 2015).  Service of the

motion on non-appearing defendants is of particular importance because "mailing notice of such

an application is conducive to both fairness and efficiency[.]"  Miss Jones, LLC v. Viera, No. 18

Civ. 1398 (NGG) (SJB), 2019 WL 926670, at *4 (Feb. 5, 2019) (quoting Committee Note, Loc.

Civ. R. 55.2), R & R adopted, 2019 WL 955279 (E.D.N.Y. Feb. 26, 2019).  Pursuant to Local

Rule 55.2(c), a motion for default judgment and supporting papers must be "mailed to the party

against whom a default judgment is sought at the last known residence of such party (if an

individual)."  Loc. Civ. R. 55.2(c).  "It is important that individuals be given notice that a party is

---

[4] In addition to the noncompliance with Local Rule of the United States District Courts for the Southern and Eastern Districts of New York ("Local Civil Rule") 55.2 discussed below, it appears that Plaintiff may not have the correct name of the owner of Rendezvous.  According to the New York Secretary of State business lookup, the CEO of Rendezvous is Igal Sriag.  See NY Dep't of State Div. of Corps Entity Information, last visited Aug. 12, 2019, available at, https://on.ny.gov/2Z8b8RS.

asking the Court to enter a default judgment against them.  The Eastern District has determined that the best way to ensure such notice is provided is to require that a motion be served on the individual's residence."  Miss Jones, 2019 WL 926670, at *4.

Here, Plaintiff mailed the motion and supporting papers to Mr. Saiag's place of business, not to his last known residence.  See Default Cert. of Serv., ECF No. 18.  During a telephone conference with this Court on August 6, 2019, Plaintiff's counsel acknowledged that service was made on Mr. Saiag's place of business and not his residence, and that such service could result in a denial of default judgment with respect to Mr. Saiag.  See ECF No. 20.  Plaintiff's counsel chose to proceed on his current papers rather than to remedy the service defect.  See id.

Plaintiff's service of the default motion on Mr. Saiag does not comply with the Eastern District's Local Civil Rules.  In light of this service failure and Plaintiff's counsel's affirmative decision not to remedy the error, this Court respectfully recommends that default judgment be denied without prejudice with respect to Mr. Saiag.  See Miss Jones, 2019 WL 926670, at *4 (denying default judgment where plaintiff served individual defendants at a business rather than residential address).  Accordingly, this Court proceeds with a liability and damages analysis only with respect to Defendant Rendezvous.

### 4.    The Default Judgment Factors Are Satisfied As To Rendezvous

When determining whether to grant a default judgment, the court is guided by the same factors that apply to a motion to set aside an entry of a default.  See Pecarsky v. Galaxiworld.com, Ltd., 249 F.3d 167, 170-71 (2d Cir. 2001); Enron Oil, 10 F.3d at 96.  These factors include:  (1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether a meritorious defense has been presented.  See Swarna v. Al-awadi, 622 F.3d 123, 142 (2d Cir. 2010); Enron Oil, 10 F.3d at 96.

As to the first factor, a defendant's nonappearance and failure to respond sufficiently demonstrates willfulness. See S.E.C. v. McNulty, 137 F.3d 732, 738-39 (2d Cir. 1998) (holding that the defendant's non-appearance and failure to respond equated to willful conduct); see also Bds. of Trs. v. Frank Torrone & Sons, Inc., No. 12 Civ. 3363 (KAM) (VMS), 2014 WL 674098, at *4 (E.D.N.Y. Feb. 3, 2014).  Rendezvous neither answered nor responded in any way despite proper service of the summons and complaint.  Further, Rendezvous has not responded to Plaintiff's motion for default judgment or otherwise appeared in this action despite Rendezvous receiving proper notice of the motion.[5]  See ECF No. 18.  Rendezvous' failure to respond to the Complaint or the instant motion sufficiently demonstrates willfulness.

Second, denying this motion would be prejudicial to Plaintiff insofar "as there are no additional steps available to secure relief in this Court."  United States v. Mance, No. 17 Civ. 2902 (NGG) (SJB), 2017 WL 4857566, at *3 (E.D.N.Y. Oct. 24, 2017) (internal quotation marks omitted).  "Without the entry of a default judgment, Plaintiff would be unable to recover for the claims adequately set forth in the [c]omplaint."  Joseph v. HDMJ Rest., Inc., 970 F. Supp. 2d 131, 148 (E.D.N.Y. 2013).

Third, Rendezvous cannot establish a meritorious defense because, by failing to appear in this action, it is unable to present any evidence regarding a defense.  See id. at 143 ("Where a defendant fails to answer the complaint, courts are unable to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations, and, accordingly, this factor weighs in favor of granting a default judgment.").  Rendezvous' failure to answer or otherwise respond to the Complaint in any way constitutes an admission of the factual allegations therein.

---

[5] As discussed above, service of the default motion and supporting papers on Mr. Saiag did not comply with the Local Civil Rules and, accordingly, the Court considers only whether the factors relevant to a default judgment are satisfied with respect to Rendezvous.

See Greathouse v. JHS Sec. Inc., 784 F.3d 105, 107 (2d Cir. 2015); Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998) ("Where . . . the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." (internal quotation marks omitted)).

As all three factors are satisfied with respect to Rendezvous, a default judgment would be proper against Rendezvous in the present circumstances if the Complaint were adequately pleaded. The Court now considers whether the facts alleged in the Complaint establish Rendezvous' liability under federal and state law. For those claims as to which the Court recommends finding Rendezvous liable, damages and their underlying calculations are discussed in Section III, infra.

**B.      Rendezvous' Liability Under The FLSA And The NYLL**

**1.      Plaintiff Qualifies For The FLSA's Protections**

In order to establish a claim under the FLSA, a plaintiff must demonstrate: (1) that he was an "employee" of the defendant; and (2) that he was either personally engaged in, or employed by an enterprise engaged in, interstate commerce or in the production of goods for interstate commerce. See 29 U.S.C. §§ 206(a), 207(a); Chen v. Major League Baseball, 6 F. Supp. 3d 449, 453-54 (S.D.N.Y. 2014).

The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Here, Plaintiff qualifies as an employee under the FLSA insofar as Plaintiff alleges in the Complaint that Rendezvous employed him as a cook within this statutory meaning. See Compl. ¶¶ 9, 42. See Garcia v. Badyna, No. 13 Civ. 4021 (RRM) (CLP), 2014 WL 4728287, at *5 (E.D.N.Y. Sept. 23, 2014) (noting that, as the plaintiff alleged in the complaint that he was an employee, "[i]t follows . . . that for purposes of this default, [the plaintiff] qualifies as an 'employee' under the FLSA").

10

The FLSA "contains a litany of exemptions" to qualified employees.  Major League Baseball, 6 F. Supp. 3d at 454 (citing 29 U.S.C. § 213).  "[T]he issue of whether [an employee's responsibilities] render the employee exempt from the FLSA's overtime provision is a question of law."  McBeth v. Gabrielli Truck Sales, Ltd., 768 F. Supp. 2d 383, 387 (E.D.N.Y. 2010) (citing Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986)).  Plaintiff's unrebutted allegations in his Complaint that he worked as a cook (a non-tipped position) at Rendezvous, see Compl. ¶ 9, are sufficient to establish that he was a non-exempt employee.  See, e.g., Li v. Leung, No. 15 Civ. 5262 (CBA) (VMS), 2016 WL 5369489, at *7 (E.D.N.Y. June 10, 2016) ("Plaintiff's Complaint states that he prepared food as a sushi chef, which is sufficient to constitute non-exempt employment under the FLSA." (internal citation omitted)).

Plaintiff also has sufficiently alleged that he was employed by an "enterprise engaged in commerce or in the production of goods for commerce."  See 29 U.S.C. § 203(s)(1). The FLSA defines that term as an enterprise that:  (1) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person"; and (2) has an "annual gross volume of sales made or business done . . . not less than $500,000."  29 U.S.C. § 203(s)(1)(A)(i)-(ii); see 29 U.S.C. § 203(b) (defining "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof").  Plaintiff alleges in the Complaint that at all relevant times, Defendants had gross revenues in excess of $500,000.00, see Compl. ¶¶ 41, 43, and that "Defendants were an employer engage in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA," id. ¶ 41; see also id. ¶ 10 ("At all relevant times, [Rendezvous] was, and continues to be, an 'enterprise engaged in commerce'

within the meaning of the FLSA.").  Plaintiff's allegations, although conclusory, are sufficient for the purposes of establishing FLSA enterprise coverage.  See, e.g., Cabrera v. Canela, No. 14 Civ. 4874 (LDH) (RML), 2019 WL 1451994, at *1 (E.D.N.Y. Mar. 29, 2019) (collecting cases from this district involving local restaurants in which the court made reasonable inferences regarding the restaurant's business in finding the interstate-commerce element met).  As in Cabrera, which involved a restaurant doing more than $500,000.00 in business, it is "eminently reasonable to infer" that Rendezvous, a restaurant grossing more than $500,000.00 in revenue, employs workers who handle materials that have traveled in interstate commerce, and "[i]ndeed, it would defy logic to assume that none of the food, drinks, or materials served or used in the restaurant originated out of state."  Id. at *1-2.

### 2.    Plaintiff Qualifies For The NYLL's Protections

To recover under the NYLL, Plaintiff must prove that he was an "employee" and that Rendezvous was his "employer," as defined by the statute.  See Lauria v. Heffernan, 607 F. Supp. 2d 403, 407-08 (E.D.N.Y. 2009).  "Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law."  Badyna, 2014 WL 4728287, at *5.

Plaintiff's burden in establishing that he is an "employee" entitled to the NYLL's protections is "substantially similar" to the burden he is required to satisfy under the FLSA. Browning v. Ceva Freight, LLC, 885 F. Supp. 2d 590, 599 (E.D.N.Y. 2012); see Topo v. Dhir, No. 01 Civ. 10881 (PKC), 2004 WL 527051, at *3 (S.D.N.Y. Mar. 16, 2004) ("There is general support for giving FLSA and the New York Labor Law consistent interpretations.").  "One way in which the NYLL's definitions are 'nearly identical' to the FLSA's definitions, but not identical, is that the New York common law test as to who is an employer for the purposes of the

12

NYLL 'focuses more on the degree of control exercised by the purported employer' over the purported employee, 'as opposed to the economic reality of the situation.'" Leung, 2016 WL 5369489, at *8 (quoting Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013)). The New York Court of Appeals has set forth the following five factors relevant to this assessment of control: whether the worker "(1) worked at his own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule." Bynog v. Cipriani Grp., Inc., 802 N.E.2d 1090, 1092-93 (2003).

Regarding the first factor, Plaintiff did not work at his own convenience insofar as his work schedule was determined by Mr. Saiag, the owner of Rendezvous. See Compl. ¶¶ 7, 27-28. Mahoney v. Amekk Corp., No. 14 Civ. 4131 (ENV) (VMS), 2016 WL 6585810, at *7 (Sept. 30, 2016) (finding that the plaintiff was protected under the FLSA when she did not work at her own convenience, ended her shifts at a specific hour, and was not permitted any lunch or rest breaks), R & R adopted, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016); cf. Sellers v. Royal Bank of Canada, No. 12 Civ. 1577 (KBF), 2014 WL 104682, at *3 (S.D.N.Y. Jan. 8, 2014) (finding that the plaintiff worked at his own convenience because he could arrive and leave work whenever he pleased and take breaks at his pleasure). The fourth and fifth factors favor Plaintiff as well, as Plaintiff was on Defendants' set payroll (receiving a fixed weekly salary, regardless of the number of hours worked), and Plaintiff worked on a fixed schedule. See Compl. ¶¶ 18-19, 27-28. The second and third Bynog factors are neutral as the Complaint is silent regarding whether Plaintiff was restricted from engaging in other employment and whether he received any fringe benefits. Given that Plaintiff claims he worked between sixty and sixty-six hours per week, certainly his available time to work another job was quite restricted. In any event, these factors, "in context, merit modest weight." Hart, 967 F. Supp. 2d at 925.

Considering the five <u>Bynog</u> factors, and in view of the overarching issue of the degree of control exercised by Rendezvous, Plaintiff qualifies as an employee under the NYLL.

### 3.    The Relevant Limitations Periods Under The FLSA And The NYLL

"The statute of limitations under the FLSA is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.'" <u>Rosario v. Valentine Ave. Discount Store, Co.</u>, 828 F. Supp. 2d 508, 519 (E.D.N.Y. 2011) (quoting 29 U.S.C. § 255(a), which states the applicable statute of limitations for claims relating to "unpaid minimum wages, unpaid overtime compensation, or liquidated damages"). Here, Plaintiff has pleaded willful FLSA violations, <u>see</u> Compl. ¶¶ 12-14, 23-25, and Rendezvous has waived the affirmative statute-of-limitations defense by virtue of its default. <u>See</u> <u>Easterly v. Tri-Star Transp. Corp.</u>, No. 11 Civ. 6365 (VB), 2015 WL 337565, at *6 (S.D.N.Y. Jan. 23, 2015) ("[A]s [the p]laintiff alleges that [the defaulting defendant] committed FLSA violations willfully, . . . the three-year federal period applies." (collecting cases)); <u>see also</u> <u>Rodriguez v. Queens Convenience Deli Corp.</u>, No. 09 Civ. 1089 (KAM) (SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) ("When a defendant defaults, the violation is considered 'willful' and the three[-]year statute of limitations applies.").

The NYLL establishes a six-year limitations period for NYLL violations. <u>See</u> N.Y. Lab. Law §§ 198(3), 663(3); <u>Man Wei Shiu v. New Peking Taste Inc.</u>, No. 11 Civ. 1175 (NGG) (RLM), 2014 WL 652355, at *10 (E.D.N.Y. Feb. 19, 2014). Therefore, Plaintiff may recover under the NYLL for claims arising outside of the FLSA's three-year limitations period but within the NYLL's six-year limitations period.

Plaintiff filed his Complaint on June 8, 2018. <u>See</u> Compl. Plaintiff may recover damages arising out of his employment going back six years under state law, or June 8, 2012, and three years under federal law, or June 8, 2015. Because Plaintiff began his employment on February

14

17, 2014, Compl. ¶ 16, he may recover under the NYLL for the entirety of his employment, and for part of his employment under federal law.

### 4. Rendezvous Is Liable For Failing To Pay Plaintiff Overtime Compensation As Required By The FLSA And The NYLL

Federal and state law require that employers pay employees "one and one-half times" their "regular rate of pay" for any hours worked in excess of forty hours per week. 29 U.S.C. § 207(a); 29 C.F.R. § 778.105; 12 N.Y.C.R.R. tit. 12, § 146-1.4. The Second Circuit has clarified in a trio of cases "the degree of specificity" that a plaintiff must meet in order to make out a Section 207(a)(1) FLSA overtime claim. See Dejesus v. HF Mgmt. Servs., LLC, 726 F.3d 85, 88-89 (2d Cir. 2013); Lundy v. Catholic Health Sys. of Long Island, Inc., 711 F.3d 106, 114 (2d Cir. 2013); Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 200-01 (2d Cir. 2013). A plaintiff must provide "sufficient detail about the length and frequency" of unpaid work in order to support "a reasonable inference" that he or she "worked more than forty hours in a given week." Nakahata, 723 F.3d at 201; see Lundy, 711 F.3d at 114 ("[I]n order state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."). Although it is not necessary for a plaintiff to estimate the number of hours he or she worked in "some or all workweeks," "some factual context" is necessary in order to "nudge [an FLSA plaintiff's] claim 'from conceivable to plausible.'" DeJesus, 726 F.3d 85 at 88-90 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff's burden, as described by these three cases, likewise applies in the context of NYLL overtime compensation claims. See Rocha v. Bakhter Afghan Halal Kababs, Inc., 44 F. Supp. 3d 337, 357 (E.D.N.Y. 2014).

Here, Plaintiff claims that Rendezvous failed to pay his earned overtime pay for the entirety of his employment. See Compl. ¶¶ 18-20. In contrast to Lundy, Nakahata and DeJesus,

in which the Second Circuit dismissed FLSA-based overtime claims as speculative and insufficiently detailed, Plaintiff here provides the Court specific information regarding the overtime hours he worked.  For example, Plaintiff alleges that his usual work schedule during the course of his employment (February 17, 2014 through May 10, 2018), was five days per week (Sundays through Thursdays) for twelve hours per day, and, in the winter, an additional six hours on Saturdays; thus, he worked between sixty and sixty-six hours per week, but was not paid for the twenty to twenty-six overtime hours (i.e., the hours worked over forty).  See Compl. ¶ 18.  Plaintiff demonstrates his overtime claim without the need for any inference (other than application of the Hospitality Wage Order, discussed infra) because his set schedule exceeded forty hours per week.  See Tackie v. Keff Enterps. No. 14 Civ. 2074 (JPO), 2014 WL 4626229, at *7 (S.D.N.Y. Sept. 16, 2014) (plaintiff adequately alleged an overtime claim where "she worked a fairly regular schedule of forty hours per week, and she occasionally worked more than forty hours per week").

In light of the foregoing, and applying the statute-of-limitations periods discussed above, Rendezvous is liable under the FLSA for failing to pay Plaintiff overtime compensation from June 8, 2015 to May 10, 2018, and under the NYLL for failing to pay Plaintiff overtime compensation from February 17, 2014 (when Plaintiff's employment began) to May 10, 2018.

### 5. Rendezvous Is Liable For Failing To Pay Plaintiff Spread-Of-Hours Premiums As Required By The NYLL

The NYLL entitles certain employees to an additional hour of pay at the minimum wage for each day that the employee works over an interval exceeding ten hours.  See 12 N.Y.C.R.R. tit. 12, § 146-1.6.  The "spread of hours" refers to the length of the interval between the beginning and end of the employee's workday.  Id.  All restaurant employees are entitled to the spread-of-hours payments at the regular minimum wage for each day they work more than ten

16

hours regardless of the employee's regular rate of pay.  See Feng Chen v. Patel, No. 16 Civ. 1130 (AT) (SDA), 2019 WL 2763836, at *10 (S.D.N.Y. July 2, 2019); Calle v. Yoneles Enter., Inc., No. 16 Civ. 1008 (NGG) (RLM), 2017 WL 6942652, at *9 (Oct. 24, 2017) (finding that the provision for spread of hours applicable to restaurant workers is "not limited to employees earning minimum wage") (collecting cases), R & R adopted, 2018 WL 401269 (E.D.N.Y. Jan. 12, 2018); see also 12 N.Y.C.R.R. tit. 12, § 146-1.6 ("This section shall apply to all employees in restaurants and all-year hotels, regardless of a given employee's regular rate of pay.").

Plaintiff alleges that he regularly worked twelve hour shifts five days a week with spread of hours exceeding ten hours each day for those five shifts.  Compl. ¶18; Pl.'s Decl. ¶ 5. Applying the statute-of-limitations period discussed above, Rendezvous is liable under the NYLL for spread-of-hours pay for each of those twelve hour shifts from February 17, 2014 (when Plaintiff's employment began) to May 10, 2018.

## III.    DAMAGES

### A.    Overtime Wages

"As a preliminary matter, when an employer fails to maintain accurate records or where, as here, no records have been produced as a consequence of a defendant's default, courts have held that the plaintiff's recollection and estimates of hours worked are presumed to be correct." Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 88 (E.D.N.Y. 2012) (internal quotation marks & alterations omitted); see Kim v. Kum Gang, Inc., No. 12 Civ. 6344, 2015 WL 2222438, at *25 (S.D.N.Y. Mar. 19, 2015) (where an employer fails to maintain records of wages and hours, plaintiffs "need only prove that they performed work for which they were not properly compensated and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference" (internal quotation marks & citations omitted)).  By defaulting, Rendezvous has not contradicted Plaintiff's specific recollections, which sufficiently

17

sets forth, inter alia, the days and hours Plaintiff worked for Rendezvous and the wages that Rendezvous paid Plaintiff. See Pl.'s Decl. ¶¶ 3-4; Compl. ¶¶ 18-19.

Plaintiff states that he worked for Rendezvous from approximately February 17, 2014 until May 10, 2018. Pl.'s Decl. ¶ 3; Compl. ¶¶ 16-17. During that time, Plaintiff regularly worked from 11:00 A.M. to 10:00 P.M., although he often stayed until 11:00 P.M. or midnight, Sunday through Thursday (i.e., between eleven and thirteen hours per day, averaging twelve hours per day, and five days per week). Pl.'s Decl. ¶ 3; Compl. ¶ 18. In the months of September through December, Plaintiff worked an additional six hours on Saturdays, in addition to his normal Sunday through Thursday schedule.[6] Compl. ¶ 18; Pl.'s Mem. at 10. At the time of Plaintiff's hiring in 2014, Plaintiff was paid a fixed salary of $450.00 per week. Pl.'s Decl. ¶ 4. Plaintiff's salary increased over time to $520.00 per week in 2015, $650.00 per week in 2016, and $800.00 per week in late 2016 through the end of his employment. Id. He received an additional $50.00 per week for working Saturdays. Id. ¶ 5.

New York's Hospitality Industry Wage Order ("Hospitality Wage Order"), N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 12, § 146 et seq., requires employers in the "hospitality industry," which includes "restaurants," id. § 146-3.1, to pay their employees hourly rates of pay, id. § 146-2.5. The Hospitality Wage Order provides that "[i]f an employer fails to pay an employee an hourly rate of pay, the employee's regular hourly rate of pay shall be calculated by

---

[6] Plaintiff's declaration states that Plaintiff worked on Saturdays from September through April, Pl.'s Decl. ¶ 3; however, the Complaint alleges that the extra day was worked only during the "winter," Compl. ¶ 18. The damages calculations provided by Plaintiff include additional hours for September through December in some instances, September through April in other instances, and January through April in still other instances. Pl.'s Mem. at 10. In light of the discrepancies throughout the papers, and the fact that the allegations in the Complaint only put Rendezvous on notice that Plaintiff was claiming the extra six hours for "winter," the Court considers the additional six hours per week only for four months of the year (September through December).

dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the workweek." Id. § 146-3.5(b). Here, Rendezvous violated the Hospitality Wage Order by paying Plaintiff a weekly salary rather than an hourly rate of pay, and Plaintiff worked sixty to sixty-six hours per week. Compl. ¶ 18-20. Using the method set forth by the Hospitality Wage Order, N.Y.C.R.R. tit. 12, § 146-3.5(b), Plaintiff's regular rate of pay is calculated by dividing his weekly earnings by forty hours ("the lesser of 40 hours or the actual number of hours worked by the employee during the workweek").[7] Based on that regular rate of pay, Plaintiff's overtime damages are calculated as follows:

1. February 17, 2014 – December 31, 2014 = 45 weeks[8]
   Base Rate:  $11.25/hour ($450.00/40 hours)
   Overtime Rate:  $16.88/hour ($11.25 x 1.5)
   $16.88 x 20 hours x 45 weeks = $15,192.00
   Additional hours on Saturdays (4 months): [6 hours x $16.88] [minus $50.00] x 16 weeks = $820.48[9]
   **Total:  $16,012.48**

---

[7] The Hospitality Wage Order was effective as of January 1, 2011, thus covering the entire period for which Plaintiff is entitled to recover damages under the NYLL.

[8] The number of weeks in this period of time is forty-five weeks and two days. For purposes of this report and recommendation, the Court rounds down to forty-five weeks because the additional days consist of less than half of the week. Similarly, the number of weeks in the 2017-2018 calculations, below, is seventy weeks and four days, and the Court rounds up to 71 weeks because the additional days consist of more than half of the week. The Court employs this rounding methodology throughout this report and recommendation.

[9] Plaintiff could have calculated his overtime rate for September through December by considering Plaintiff's weekly rate of pay to be $500.00 for those weeks, rather than continuing to use the $450.00 weekly rate and treating the $50.00 additional payment as overtime payment. The former method of calculation would have yielded a higher damages award. The Court will apply Plaintiff's requested calculations because the Court will not award more than the damages Plaintiff seeks and only those about which Rendezvous was provided notice. This methodology applies throughout each time period for Plaintiff's overtime calculations.

2. <u>January 1, 2015 – December 31, 2015 = 52 weeks</u>
Base Rate:  $13.00/hour ($520.00/40 hours)
Overtime Rate:  $19.50/hour ($13.00 x 1.5)
$19.50 x 20 hours x 52 weeks = $20,280.00
Additional hours on Saturdays (4 months): [6 hours x $19.50] [minus $50.00] x
16 weeks = $1,072.00
**Total:  $21,352.00**

3. <u>January 1, 2016 – December 31, 2016[10] = 52 weeks</u>
Base Rate:  $16.25/hour ($650.00/40 hours)
Overtime Rate:  $24.38/hour ($16.25 x 1.5)
$24.38 x 20 hours x 52 weeks = $25,355.20
Additional hours on Saturdays (4 months): [6 hours x $24.38] [minus $50.00] x
16 weeks = $1,540.48[11]
**Total:  $26,895.68**

4. <u>January 1, 2017 – May 10, 2018 = 71 weeks</u>
Base Rate:  $20.00/hour ($800.00/40 hours)
Overtime Rate:  $30.00/hour ($20.00 x 1.5)
$30.00 x 20 hours x 71 weeks = $42,600.00
Additional hours on Saturdays (4 months): [6 hours x $30.00] [minus $50.00] x
16 weeks = $2,080.00
**Total:  $44,680.00**

---

[10] Plaintiff alleges that in late 2016, his weekly earnings increased to $800.00.  Pl.'s Decl. ¶ 4.
He does not specify at what point in 2016 this change occurred and Plaintiff's damages
calculations do not consider his increased earnings until the following year (2017).  Because the
Court does not have a precise date and Plaintiff's calculations decrease, rather than increase, any
damages award, the Court applies Plaintiff's selected dates for purposes of overtime calculations.

[11] As a result of the discrepancy in the papers regarding the months during which Plaintiff
worked Saturdays, <u>see</u> note 3, <u>supra</u>, this calculation differs from Plaintiff's calculations, which
include the months of September through April, <u>see</u> Pl.'s Mem. at 10.

As noted above in Section II.B.3, Plaintiff can recover damages under the NYLL for the entirety of his employment, from February 17, 2014 through May 10, 2018.  Accordingly, Plaintiff is entitled to a total of **$108,940.16** in unpaid overtime damages under the NYLL.[12]

### B.    Spread-Of-Hours Premium

As discussed above in Section II.B.5, the NYLL entitles Plaintiff, as a restaurant employee, to an additional hour of pay at the minimum wage rate for each day that he worked over an interval exceeding ten hours.  See 12 N.Y.C.R.R. tit. 12, § 146-1.6.  Plaintiff alleges that five days a week throughout the entirety of his employment he worked shifts exceeding ten hours.  Compl. ¶18; Pl.'s Decl. ¶ 5.  Rendezvous is liable for spread-of-hours pay for each of those shifts, totaling damages in the amount of $10,285.00 as follows:

---

[12] In light of the FLSA's shorter statute-of-limitations period, Plaintiff's damages under the NYLL are greater than the damages to which he would be entitled under the FLSA.  "When two forms of damages are available for the same violation, courts have generally awarded the higher of the two."  Rana v. Islam, 887 F.3d 118, 119 (2d Cir. 2018) (per curiam).  Plaintiff may not recover for uncompensated overtime under both statutes.  See Pinzon v. Paul Lent Mech. Sys., No. 11 Civ. 3384 (DRH) (WDW), 2012 WL 4174725, at *3 (Aug. 21, 2012) (plaintiff may "not double dip" or obtain a "double recovery" of unpaid overtime wages under the FLSA and the NYLL), R & R adopted, 2012 WL 4174410 (E.D.N.Y. Sept. 19, 2012).

| Time Period | NYLL Minimum Wage[13] | Number Of Days Worked Over 10 Hours | Number Of Weeks In Time Period | Total Spread of Hours Owed for Time Period |
|---|---|---|---|---|
| February 17, 2014 – December 31, 2014 | $8.00 | 5 | 45 | $1,800.00 |
| January 1, 2015 – December 31, 2015 | $8.75 | 5 | 52 | $2,275.00 |
| January 1, 2016 – December 31, 2016 | $9.00 | 5 | 52 | $2,340.00 |
| January 1, 2017 – December 31, 2017 | $10.50 | 5 | 52 | $2,730.00 |
| January 1, 2018 – May 10, 2018 | $12.00 | 5 | 19 | $1,140.00 |
| **Total:** | | | | **$10,285.00** |

### C.    Liquidated Damages

The FLSA and NYLL both allow for liquidated damages awards equaling one-hundred percent of the wages due.  See 29 U.S.C. § 260; N.Y. Lab. Law § 663(1).  Plaintiff requests liquidated damages only under the NYLL.  Pl.'s Mem. at 10-11.  See Rana, 887 F.3d at 122-23 (settling what had been an unresolved question in the Circuit by interpreting the NYLL and FLSA "as not allowing duplicative liquidated damages for the same course of conduct").  As Plaintiff's overtime damages are best calculated under the NYLL, which provides a greater recovery, Plaintiff is permitted to recover liquidated damages for unpaid overtime and spread-of-

---

[13] As of December 31, 2016, the applicable minimum wage varies depending on the size of the employer, with a higher minimum wage applying to large employers with eleven or more employees, and a lower minimum wage applying to small employers with ten or fewer employees.  See 12 N.Y.C.R.R. tit. 12, § 146-1.2.  Plaintiff does not allege the number of Rendezvous' employees, asserting only that there are "dozens of Collective Action Members who worked for Defendants during the Collective Action Period."  Compl. ¶ 33.  It is not clear from this allegation how many employees worked for Rendezvous at any given time.  Where, as here, a plaintiff fails to provide information sufficient for the Court to determine the size of an employer's workforce, the Court applies the lower rate for small employers.  See Toribio v. Abreu, No. 18 Civ. 1827 (ARR) (RLM), 2018 WL 6363925, at *6 n.3 (Nov. 15, 2018), R & R adopted, 2018 WL 6335779 (E.D.N.Y. Dec. 4, 2018).  Prior to December 31, 2016, the historic minimum wage was uniform; it can be found on the New York State Department of Labor website.  See https://labor.ny.gov/stats/minimum_wage.shtm.

hours premiums under the NYLL.  See Calle, 2017 WL 6942652, at *15 (awarding liquidated damages for both unpaid overtime compensation and spread-of-hours compensation).[14]

Applying one-hundred percent liquidated damages, Plaintiff is entitled to **$119,225.16** in liquidated damages for unpaid overtime ($108,940.16) and spread-of-hours ($10,285.00) damages under the NYLL.  See Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 47 (E.D.N.Y. 2015) ("The NYLL was amended on April 9, 2011 to provide the same 100% in liquidated damages as the FLSA.")

### D.    Wage Statements (NYLL § 195(3))

Plaintiff seeks to recover statutory damages under the WTPA for Rendezvous' failure to provide accurate wage statements.  Compl. ¶¶ 21, 29, 31, 48, 59.[15]  The WTPA requires employers to provide employees with a "wage statement" with each payment of wages.  N.Y. Lab. Law § 195(3).  Each wage statement must include the following information:

> the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. . . . [T]he statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

N.Y. Lab. Law § 195(3).

---

[14] Under the NYLL, "liquidated damages are presumed unless defendants can show subjective good faith."  Zubair v. EnTech Eng'g, P.C., 900 F. Supp. 2d 355, 360 n.3 (S.D.N.Y. 2012); see N.Y. Lab. Law § 663(1) ("[U]nless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due.").  As Rendezvous has defaulted, it has not established good faith to rebut the presumption.

[15] Although Plaintiff refers to both wage statements and wage notices in his Memorandum of Law, Pl.'s Mem. at 12, he asks only for a statutory recovery of $5,000.00, id. at 14.

Prior to February 27, 2015, the WTPA entitled employees to recover wage statement damages of $100 per workweek, not to exceed $2,500.  See 2010 N.Y. Laws ch. 564 § 7, amending N.Y. Lab. Law § 198(1-d); see Baltierra v. Advantage Pest Control Co., No. 14 Civ. 5917 (AJP), 2015 WL 5474093, at *10 (S.D.N.Y. Sept. 18, 2015).  As of February 27, 2015, employees are entitled to recover $250 for each work day that the violation occurred, not to exceed $5,000.  See N.Y. Lab. Law § 198(1-d); see Baltierra, 2015 WL 5474093, at *10.

Employees who commenced their employment before the WTPA took effect may recover damages for wage statement violations occurring after its effective date.  See Gamero, 272 F. Supp. 3d 481, 510-11 (S.D.N.Y. 2017) (awarding damages for violations of NYLL § 195(3)'s wage notice requirement where plaintiffs' employment commenced before the effective date of the WTPA); see also Bonn-Wittingham v. Project O.H.R. (Office for Homecare Referral), Inc., No. 16 Civ. 541 (ARR) (JO), 2016 WL 7243541, at *8 (E.D.N.Y. Dec. 14, 2016) (finding the employee eligible for damages for wage statement violations where his employment began before the WTPA went into effect); Carter v. Tuttnaeur U.S.A. Co., 78 F. Supp. 3d 564, 570 (E.D.N.Y. 2015) (same).

Plaintiff alleges that he was never provide with any document or written statement accurately accounting for his actual hours worked, or setting forth his hourly rate of pay, as required by the WTPA.  See Compl. ¶¶ 21, 59.  As Rendezvous failed to provide Plaintiff with wage statements setting forth statutorily required information, Plaintiff is entitled to recover damages for wage-statement violations.  See, e.g., Severino, 2015 WL 12559893, at *9

("Employers may . . . be held liable for furnishing wage statements that fail to comply with all of the WTPA's enumerated requirements.").[16]

Plaintiff seeks $5,000.00 in damages for wage statement violations. Pl.'s Mem. at 14. As this amount is the statutory maximum and, subsequent to the 2015 WTPA amendments, Plaintiff worked far more than the twenty workdays this amount represents (20 days multiplied by the $250-per-day statutory penalty), Plaintiff is entitled to the recover the requested $5,000.00.

### E.    Pre-judgment Interest Under The NYLL

Plaintiff seeks to recover pre-judgment interest on overtime damages and spread-of-hours premiums under the NYLL. See Compl. at 13; Pl.'s Mem. at 17. "[T]he NYLL permits the award of . . . pre-judgment interest." Fermin, 93 F. Supp. 3d at 38; see also Calle, 2017 WL 6942652, at *17 & n.22 (stating that pre-judgment interest is appropriate for withheld wages, overtime wages and spread-of-hours damages, but not for liquidated damages or WPTA statutory damages). Under the N.Y.C.P.L.R., "[i]nterest shall be at the rate of nine per centum per annum . . . ." N.Y.C.P.L.R. § 5004. Courts in this Circuit ordinarily apply the N.Y.C.P.L.R.'s statutory rate of nine percent per annum computed on a simple interest basis from "the earliest ascertainable date the cause of action existed." N.Y.C.P.L.R §§ 5001(b), 5004; see Koylum, Inc. v. Peksen Realty Corp., 357 F. Supp. 2d 593, 596 (E.D.N.Y. 2005) (discussing N.Y.C.P.L.R. §§ 5001, 5004).

---

[16] It may be that an employer could raise a substantial-compliance argument such that the alleged errors in the contents of the wage-statements furnished to Plaintiff need not lead to an automatic wage-statement violation. Without Rendezvous' participation in this case, there is no way to evaluate whether this or other defenses are available.

Where, as here, damages were "incurred at various times," courts typically use the "midpoint of the accrual of damages" method to calculate interest.  See, e.g., Padilla v. Manlapaz, 643 F. Supp. 2d 302, 314 (E.D.N.Y. 2009); Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 342 (S.D.N.Y. 2005); Liu v. Jen Chu Fashion Corp., No. 00 Civ. 4221 (RJH) (AJP), 2004 WL 33412, at *5 (S.D.N.Y. Jan. 7, 2004).  In exercising its discretion, the Court calculates pre-judgment interest from March 29, 2016, which is the midpoint between the earliest date on which Plaintiff may recover damages for NYLL violations (the start of his employment on February 17, 2014) and the date Plaintiff's employment ended (May 10, 2018).  See Calle, 2017 WL 6942652, at *18 (calculating pre-judgment interest from the midpoint between the start and end dates of plaintiff's employment); Gunawan, 897 F. Supp. 2d at 85-86 (calculating pre-judgment interest from the midpoint between the start of plaintiff's employment and her termination); Wicaksono v. XYV 48 Corp., No. 10 Civ. 3635 (LAK) (JCF), 2011 WL 2022644, at *9 (S.D.N.Y. May 2, 2011) (finding that calculating pre-judgment interest from the midway point of each plaintiff's employment is a reasonable approach).

Plaintiff is owed $119,225.16 in overtime compensation and spread-of-hours damages under the NYLL.  Therefore, Plaintiff is entitled to pre-judgment interest calculated at a daily rate of $29.40 from March 29, 2016 through the date on which judgment is entered.[17]

### F.    Post-judgment Interest

Plaintiff is entitled to post-judgment interest under 28 U.S.C. § 1961(a), which provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a); see Fermin, 93 F. Supp. 3d at 53 (finding post-judgment interest to

---

[17] This daily interest rate was calculated by multiplying $119,225.16 (total unpaid overtime and spread-of-hours damages) by .09 (annual interest rate), and then dividing the product by 365 (days in a year), which results in a rounded rate of $29.40.

be mandatory in an FLSA- and NYLL-based default judgment); <u>Duffy v. Oyster Bay Indus.,</u> <u>Inc.</u>, No. 10 Civ. 3205 (ADS) (ETB), 2011 WL 2259798, at *3 (Mar. 29, 2011) ("The very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered."), <u>R & R adopted</u>, 2011 WL 2259749 (E.D.N.Y. June 2, 2011).  Under the statute, post-judgment interest is calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment."  28 U.S.C. § 1961(a).

Plaintiff is entitled to statutory post-judgment interest on the money judgment, which should be calculated by the Clerk of Court from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961.

### G.   Attorney's Fees And Costs

Plaintiff requests that the Court award attorney's fees and costs.  Compl. at 13; Cooper Decl. ¶¶ 2, 8; Pl.'s Mem. at 14-15.  Both the FLSA and NYLL contain fee-shifting provisions allowing for the recovery of reasonable attorney's fees and costs to a prevailing plaintiff.  <u>See</u> 29 U.S.C. § 216(b); N.Y. Lab. Law § 198, 663(1).  Here, Plaintiff seeks $7,512.00 in attorney's fees and $555.00 in costs.  <u>See</u> Cooper Decl., Ex. G.  In support of his claim for attorney's fees and costs, Plaintiff submits a Declaration from Plaintiff's counsel, Cooper Decl., and a billing statement attached thereto, <u>id.</u>, Ex. G.

### 1.   Attorney's Fees

The party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and the necessity of the hours spent and rates charged.  <u>See</u> <u>N.Y.S. Ass'n for</u> <u>Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1148 (2d Cir. 1983).  Requests for attorney's

fees in this Circuit must be accompanied by contemporaneous time records that show "for each attorney, the date, the hours expended and the nature of the work done."  Koon Chun Hing Kee Soy & Sauce Factory v. Kun Fung USA Trading Co., No. 07 Civ. 2568 (JG) (SMG), 2012 WL 1414872, at *10 (E.D.N.Y. Jan. 20, 2012).  District courts have broad discretion in determining reasonable attorney's fees.  See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).  The standard method for determining the amount involves calculation of the "lodestar" figure.  See, e.g., Blanchard v. Bergeron, 489 U.S. 87, 87 (1989).  Under the lodestar approach, "the number of hours reasonably expended on the litigation is multiplied by a reasonable hourly rate for attorneys and paraprofessionals."  Grant v. Martinez, 973 F.2d 96, 99 (2d Cir.1992).

### i.      Reasonable Hourly Rate

A reasonable hourly rate is the rate "a reasonable, paying client would be willing to pay . . . bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively."  Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 184, 190 (2d Cir. 2008).  Reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers for reasonably comparable skill, experience, and reputation."  Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing Blum v. Stenson, 465 U.S. 886, 894 (1984)).  Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community.  See Farbotko v. Clinton Cny. of N.Y., 433 F.3d 204, 209 (2d Cir. 2005).  The "community" is generally considered the district where the district court sits.  See Lochren v. Cty. of Suffolk, 344 F. App'x 706, 708 (2d Cir. 2009).

"This Circuit's 'forum rule' generally requires use of 'the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable

fee.'"  Bergerson v. N.Y. State Office of Mental Health, 652 F.3d 277, 290 (2d Cir. 2011)

(quoting Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009)).  Therefore, the

Court will look to fees awarded in recent FLSA and NYLL default judgment cases in the Eastern

District of New York in order to determine whether the fees requested are reasonable.  In this

District, approved hourly rates for attorneys normally range from "$200 to $450 for partners in

law firms, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100

for paralegals."  Hui Lan Weng v. Fancy Lee Sushi Bar & Grill, Inc., No. 15 Civ. 5737 (ADS)

(ARL), 2017 WL 5564892, at *2 (Nov. 3, 2017), R & R adopted, 2017 WL 5564593 (E.D.N.Y.

Nov. 18, 2017).  Where there is a default judgment, however, lower rates are warranted due to

the lack of opposition.  See Siracuse v. Program for the Dev. of Human Potential, No. 07 Civ.

2205 (CLP), 2012 WL 1624291, at *28 (E.D.N.Y. Apr. 30, 2012).

      Plaintiff's counsel, Peter H. Cooper, Esq., requests a rate of $400.00 per hour.  As set

forth in Plaintiff's memorandum of law, Mr. Cooper was admitted to the Southern District of

New York in July 1997, and has litigated cases in both state and federal courts in New York.

Pl.'s Mem. at 15.  According to his firm's website, Mr. Cooper is a founding partner of the law

firm Cilenti & Cooper, PLLC.[18]  Although Mr. Cooper and his firm appear to have substantial

experience practicing in this district and in this type of litigation, Mr. Cooper does not provide

further detailed information concerning his experience in the subject matter of this action, such

as the number or types of cases he has handled.  He and his firm appear to have reasonably

extensive experience in FLSA and NYLL actions based on other attorneys' fee applications

---

[18] Although Plaintiff's counsel does not provide information about his experience in a
declaration, the New York State Unified Court System's Attorney Directory confirms that Mr.
Cooper has been admitted to practice law in the state of New York since 1996 and currently
practices at the law firm of Cilenti & Cooper, PLLC.

made by Mr. Cooper's firm, for both his work and the work of his partner, Mr. Cilenti.  See, e.g., Fermin, 93 F. Supp. 3d at 52; Cuevas v. Ruby Enter. of NY Inc., No. 10 Civ. 5257 (JS) (WDW), 2013 WL 3057715, at *2 (E.D.N.Y. June 17, 2013); Fundora v. 87-10 51st Ave. Owners Corp., No. 13 Civ. 738 (JO), 2015 WL 729736, at *1 (E.D.N.Y. Feb. 19, 2015).

The nature of the work in this case was relatively straightforward, "particularly since the defendants defaulted, and no novel or complex issues were raised by plaintiff."  Rosas v. Subsational, No. 11 Civ. 2811 (FB) (MDG), 2012 WL 4891595, at *10 (E.D.N.Y. Sept. 11, 2012).  Accordingly, the Court finds that a rate of $375.00 per hour is appropriate in this instance.  See Jemine v. Dennis, 901 F. Supp. 2d 365, 392 (E.D.N.Y. 2012) (awarding $375.00 per hour to experienced litigator in a "relatively straightforward" FLSA and NYLL litigation); Santillan v. Henao, 822 F. Supp. 2d 284, 300 (E.D.N.Y. 2011) (same); see also Cuevas, 2013 WL 3057715, at *2 (reducing Mr. Cooper's requested rate from $400.00 to $350.00 six years ago).

### ii.    Reasonable Number Of Hours Expended

In determining the proper number of hours for which a party should be compensated, the court "should exclude excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims."  Quarantino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999).  "The relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."  Grant, 973 F.2d at 99.  The Court must "examine[] the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case."  Luciano v. Olsten Corp., 109 F.3d 111, 116 (2d Cir. 1997).

Here, the billing statement submitted by Plaintiff's counsel reflects 21 hours of works expended in this case for which Plaintiff seeks payment – with 19.5 hours for which Plaintiff's counsel seeks its full fee of $400.00 per hour and 1.5 hours for which Plaintiff's counsel seeks only $75.00 per hour.[19]  Cooper Decl., Ex. G.  The Court finds the hours to reflect a reasonable amount of time expended to litigate this action, with the exception of a half hour spent preparing a letter to this Court regarding its second attempt to serve Rendezvous in light of its initial inadequate service.  See Lopez v. PMMT Inc., No. 14 Civ. 2057 (FB) (VMS), 2017 WL 27943, at *16 (Jan. 3, 2017) (determining that 25.6 hours spent in litigating FLSA and NYLL default action was reasonable), R & R adopted, 2016 WL 7633264 (E.D.N.Y. Aug. 25, 2016); Cruceta v. City of N.Y., No. 10 Civ. 5059 (FB) (JO), 2012 WL 2885113, at *8 (Feb. 7, 2012) (determining that 17.1 hours spent litigating FLSA default case was reasonable), R & R adopted, 2012 WL 2884985 (E.D.N.Y. July 13, 2012).  This Court respectfully recommends that Plaintiff's counsel be awarded fees at a rate of $375.00 per hour for 19 hours of work and at a rate of $75.00 per hour for 1.5 hours of work, for a total of **$7,237.50** ((19 hours x $375.00) + (1.5 hours x $75.00)).

### 2.    Costs

A party awarded attorney's fees is also "entitled to compensation for those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."  LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998).  Here, Plaintiff seeks costs in the amount of $555.00, consisting of this Court's filing fee ($400.00) and process server fees

---

[19] Plaintiff's Memorandum of Law asserts that Plaintiff's counsel incurred over fifty hours of attorney time in this litigation.  Pl.'s Mem. at 15.  This hour discrepancy was discussed at the August 6, 2019 conference, during which Plaintiff's counsel confirmed that the hours reflected in the invoice of legal services attached to the Cooper Declaration are correct and the hours referenced in the Memorandum of Law are erroneous.  8/6/2019 Conf.

($155.00).  Cooper Decl., Ex. G.  The Court finds that these costs are of the type normally incurred and charged to clients.  See, e.g., Manswell v. Heavenly Miracle Acad. Servs., No. 14 Civ. 7114 (MKB) (SMG), 2017 WL 9487194, at *23 (E.D.N.Y. Aug. 23, 2017) ("Costs for filing, process servers, and photocopying . . . are generally recoverable."); Ferrera v. Tire Shop Ctr., No. 14 Civ. 4657 (FB) (LB), 2016 WL 7626576, at *6 (Oct. 14, 2016) ("$142 for service of process of the complaint and amended complaint on two defendants [wa]s reasonable" where plaintiff's counsel failed to submit supporting documentation but had sworn that the costs were incurred), R & R adopted, 2017 WL 27946 (E.D.N.Y. Jan. 3, 2017).  Because the first attempt to serve Rendezvous was improper, this Court recommends denying Plaintiff's costs ($51.00) in connection with that first attempt.  Accordingly, this Court recommends that Plaintiff be awarded **$504.00** in costs.

## IV.    CONCLUSION

In light of the foregoing, the Court respectfully recommends that the District Judge deny without prejudice Plaintiff's motion for default judgment against Mr. Saiag, enter default judgment against Rendezvous and award **$251,191.82** in damages to Plaintiff and against Rendezvous consisting of the following:

- $108,940.16 for unpaid overtime pay;

- $10,285.00 for spread-of-hours premiums;

- $119,225.16 in liquidated damages;

- $5,000.00 for wage statement violations; and

- $7,741.50 in attorney's fees and costs.

In addition, the Court respectfully recommends awarding Plaintiff pre-judgment interest in the amount of $29.40 per day from March 29, 2016 through the entry of judgment.  The Court also

respectfully recommends awarding Plaintiff post-judgment interest, to be calculated by the Clerk of Court at the statutory rate prescribed by 28 U.S.C. § 1961.

## V.    OBJECTIONS

This report and recommendation will be filed electronically, and Chambers will mail copies to Defendants at Rendezvous' business address:  2925 Avenue P, Brooklyn, New York 11229.

Written objections to this report and recommendation must be filed within fourteen days of service and in accordance with the Individual Rules of the District Judge.  Failure to file objections within the specified time waives the right to appeal.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).


Dated:  Brooklyn, New York
             August 16, 2019

*Vera M. Scanlon*
_____
VERA M. SCANLON
United States Magistrate Judge